## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN GUTHRIE,** | : | **CIVIL ACTION NO. 1:20-cv-2351** |
| **Plaintiff** | : | **(MANNION, D.J.)** |
| | | **(SCHWAB, M.J.)** |
| v. | : | |
| **JOHN WETZEL[1], *et al.*,** | : | |
| **Defendants** | : | |

### **MEMORANDUM**

Presently before the court is Magistrate Judge Susan C. Schwab's December 13, 2021 report and recommendation (hereinafter "report"), (Doc. 13), which recommends the denial of the defendants' motion to dismiss the civil rights complaint filed by transgender prisoner Dawn Guthrie, (Doc. 6). The report also recommends that at this stage of the proceedings, the case proceed with respect to the plaintiff's 8th Amendment claims in which she alleges that defendant prison officials violated her rights by refusing to

---

[1] The report correctly recommends that since John Wetzel, who was the Secretary of the Pennsylvania Department of Corrections, ("DOC"), when the complaint was filed, no longer holds this position, George Little, the acting Secretary of the DOC, be substituted pursuant to Fed.R.Civ.P. 25(d) for Wetzel, in his official capacity, only for purposes of plaintiff's request for injunctive relief. However, plaintiff's claim for money damages against Wetzel in his individual capacity will remain.

provide her with adequate care for her gender dysphoria, including gender affirming surgery. Defendants have filed objections to the report, (Doc. 14), and plaintiff filed a response to the objections. For the following reasons, the report will be adopted in its entirety and the defendants' objections will be overruled. Plaintiff's claims will proceed against all defendants.

### I. BACKGROUND

Since the complete background of this case is stated in the report, it will not be fully repeated herein. At all relevant times, plaintiff was a state prisoner at SCI-Mahanoy, a men's prison, and as a transgender woman who is recognized by the DOC as female, she has raised constitutional claims under the 8th Amendment against four defendant prison officials regarding their alleged failure to provide her with proper medical care for her gender dysphoria condition, including denying her gender affirming surgery and failing to provide her access to a transgender health specialist. Plaintiff further claims that all of the defendants have violated her rights by interfering with her attempt to socially transition, denying her access to female commissary items, hair removal, and transferring her out of a women's prison, (SCI-Muncy), to a men's prison.

The named defendants include Wetzel, who is sued in his individual and official capacities, but he will remain a party only in his individual capacity, and George Little will be substituted for Wetzel to the extent that he was sued in his official capacity. Dr. Paul Noel the former Chief of Clinical Services for the DOC, who is sued in his individual capacity, Dr. Palukuri (incorrectly spelled by plaintiff as "Paluki") Reddy, the Chief Psychiatrist for the DOC, who is sued in his individual and official capacities, and Dr. Arlene Seid, the Chief of Clinical Services for the DOC, who is sued in her official capacity.

As relief, plaintiff seeks injunctive and declaratory relief as well as compensatory and punitive damages.[2]

---

[2] To the extent plaintiff seeks declaratory judgment that defendants violated her 8th Amendment rights in the past, there is no doubt that declaratory judgment is not meant to adjudicate alleged past unlawful activity. However, the plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights. *See* Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009) (Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that she will suffer harm in the future) (citations omitted). Thus, the plaintiff is not entitled to declaratory relief that defendants violated her rights in the past as she alleges, in part. *Id*. (citing Brown v. Fauver, 819 F.2d 395, 399-400 (3d Cir. 1987)) (Third Circuit directed district court to dismiss plaintiff's §1983 claim for prospective relief where he "has done nothing more than allege past exposure to unconstitutional state action"). In this case, the plaintiff has also alleged ongoing violations of her constitutional rights, and her request for declaratory judgment in this respect can proceed.

On March 8, 2021, defendants jointly filed a motion to dismiss plaintiff's complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. (Doc. 6). On December 13, 2021, Judge Schwab issued her report recommending that defendants' motion to dismiss be denied. (Doc. 13). On December 22, 2021, defendants filed timely objections to the report. On January 5, 2022, plaintiff filed a brief in opposition to defendants' objections. (Doc. 15).

**II. STANDARD OF REVIEW**

When objections are timely filed to the report and recommendation of a magistrate judge, the district court reviews *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard of review is *de novo*,

---

In their objections to the report, defendants also note that to the extent plaintiff seeks injunctive relief, such relief is no longer available as to Dr. Noel, who is sued in his individual capacity, since he has retired from the DOC. As such, plaintiff's claim for injunctive relief against Dr. Noel will be dismissed. However, Dr. Noel will not be terminated as a defendant since the plaintiff has also requested monetary relief against him, and her claim for damages against Dr. Noel, in his individual capacity, can proceed. Defendants also note that since Dr. Seid is sued only in her official capacity and since she is also no longer employed by the DOC, she is not able to implement any injunctive relief that may be ordered. As to Dr. Seid, under Rule 25(d), she should be automatically replaced by the current Chief of Clinical Services. Thus, counsel for defendants is directed to advise the court of the name of the current DOC Chief of Clinical Services and this person will be substituted for Dr. Seid as a defendant.

4

the extent of review is committed to the sound discretion of the district judge and the court may rely on the magistrate judge's recommendations to the extent it deems proper. Rieder v. Apfel, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72(b), advisory committee notes. *See also* Univac Dental Co. v. Dentsply Int'l Inc., 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every report and recommendation)). Nonetheless, regardless of whether or not timely objections are made to the report, the district court may accept, not accept, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(b)(3).

**III. DISCUSSION**

The court, when reviewing a complaint for failure to state a claim, applies the legal standard set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The standard set forth regarding a motion to dismiss under Rule 12(b)(6), requires the court to test the sufficiency of a complaint's allegations. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." *Id.* at 234-35.

Initially, as the report states, the 11th Amendment bars plaintiff's claims for damages under 42 U.S.C. §1983 against Wetzel, Dr. Reddy, and Dr. Noel in their official capacities. The report also finds that the 11th Amendment does not bar plaintiff's claims against the defendants in their official capacities for prospective injunctive relief, to the extent noted above, and that her claims against defendants Wetzel, Dr. Noel, and Dr. Reddy for money damages in their individual capacities are also not barred and will proceed. No doubt that

plaintiff cannot seek compensatory and punitive damages against any of the DOC defendants in their official capacity, and any such claims are dismissed. *See* Atwell v. Schweiker, 274 Fed.Appx. 116 (3d Cir.); s*ee also* Gannaway v. Stroumbakis, 842 Fed.Appx. 725, 729 (3d Cir. 2021) (Holding that "[w]hen a plaintiff brings a civil rights action against a government employee, courts distinguish between the employee's official and individual capacity. [A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. The Eleventh Amendment render[s] states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court.") (internal citations and quotations omitted). However, plaintiff can seek damages against defendant state officials, including Wetzel and Dr. Noel, in their individual capacities. *See* Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990). Thus, the above stated findings in the report will be adopted.

Next, the report explains, in a thorough fashion, why the 8th Amendment claims raised by the plaintiff should proceed against all defendants at this stage of the litigation.[3]

---

[3] Since the report states the correct legal standards as well as the correct case law regarding the analysis of the plaintiff's 8th Amendment

7

The report correctly finds that plaintiff's gender dysphoria constitutes a serious medical need for purposes of an 8th Amendment claim. *See* Doe v. Pa. DOC, 2021 WL 1583556, at *22 (W.D. Pa. Feb. 19, 2021), adopted by 2021 WL 1115373 (March 3, 2021);[4] *see also* Edmo v. Corizon, Inc., 935 F.3d 757, 785 (9th Cir. 2019) (holding that "[prisoner's] gender dysphoria is a sufficiently serious medical need to trigger the State's obligations under the Eighth Amendment.") (string citations omitted). "[D]eliberate indifference to serious medical needs of prisoners" violates the 8th Amendment, and the DOC has a duty to provide proper medical care for state inmates serving sentences in its prisons. Estelle, 429 U.S. at 103-04, 97 S.Ct. 285.

Since plaintiff has alleged a sufficiently serious medical need, she must now "show the [DOC officials'] response to the need was deliberately indifferent." Edmo, 935 F.3d at 786. Thus, the issue becomes whether plaintiff has sufficiently alleged in her complaint that defendants have shown deliberate indifference to her serious medical need by denying her requests for access to a transgender healthcare specialist, hair removal, gender

---

claims brough under §1983, they will not be fully repeated herein. *See also* Doe, 2021 WL 1583556, at *22.

[4] The court notes that counsel for the plaintiff in this case also represent the plaintiff in Doe, and the allegations made in the complaint in this case are similar to the allegations raised in the Doe case. *See* 2021 WL 1583556, at *2-4. (*See also* Doc. 15-1, copy of Doe decision).

8

affirming surgery, female commissary items, and a transfer to a women's prison. Although the likelihood of plaintiff succeeding on all of her claims may be doubtful, *see* Aliahmed v. Troxler, 839 Fed.Appx. 675, 677 (3d Cir. 2021) (Third Circuit affirmed district court's denial of the "extraordinary remedy" of a preliminary injunction insofar as plaintiff inmate with gender dysphoria claimed prison officials deprived her of her 8th Amendment rights, in part, by failing to transfer her to a women's prison, since she lacked a "cognizable liberty interest in being confined in any particular institution) (citation omitted), this does not prevent her claims from proceeding at this juncture of the case under the Rule 12(b)(6) standard. Further, in Aliahmed, the Third Circuit also affirmed the district court's denial of the preliminary injunction motion finding that "[a]t this time, [plaintiff's] request to be scheduled for immediate gender reassignment surgery reflects disagreement as to the proper course of treatment rather than any deliberate delay or denial of necessary medical care that might give rise to a deliberate indifference claim", based on the record in that case. However, such a determination in the present case is premature since discovery has not yet commenced and there is no record as to whether plaintiff has been provided with proper medical care for her gender dysphoria and whether she has been properly evaluated and monitored, particularly since she alleges she has not been.

*See* Doe, 2021 WL 1583556, at *23 (stating that "the Third Circuit has made clear, the fact that prison medical personnel have provided some medical care to an inmate does not preclude a finding of deliberate indifference.") (citing Palakovic v. Wetzel, 854 F.3d 209, 228 (3d Cir. 2017)). In fact, plaintiff alleges that defendants were deliberately indifferent to her medical needs and denied her proper treatment, as detailed by the report. (Doc. 13 at 22-23). After discovery is completed and the record is established, defendants will be given the opportunity to file a summary judgment motion with respect to plaintiff's 8th Amendment claims. *See* Edmo, 935 F.3d at 786 (holding that "[i]n the final analysis under the Eighth Amendment, [the court] must determine, considering the record, the judgments of prison medical officials, and the views of prudent professionals in the field, whether the treatment decision of responsible prison authorities was medically acceptable [under the circumstances].").

Further, as plaintiff points out in her response to defendants' objections, (Doc. 15 at 9-10), it is of no moment in determining whether plaintiff has stated a cognizable 8th claim that DOC's policy 13.2.1., Section 19 may provide the relief plaintiff is requesting. As plaintiff states, she alleges that "[d]efendants are responsible for a policy that creates an unreasonable risk of constitutional injury even if it theoretically allows for gender affirming

care", especially since it was "[c]are that was never actually provided to [her], or anyone else."

As such, the court will adopt the report's finding that plaintiff has plausibly stated 8th Amendment claims against all of the defendants at this stage of the case and its recommendation that defendants' motion to dismiss be denied. (Doc. 13 at 22-23) (citing, in part, Doe, 2021 WL 1583556, at *24 (denying the motion to dismiss because the denial of gender affirming surgery can meet the deliberate indifference standard)). In Doe, *id*. at *23, the court also held that "[t]he factual allegations of Doe's [] Complaint, taken as a whole, and allowing Doe every reasonable inference that may be drawn from those facts, are sufficient to state an Eighth Amendment claim", and that "Doe's claim is premised on allegations that the Defendants engaged in a long-standing refusal to provide the treatments and therapies that Doe contends were mandated [for her gender dysphoria condition] by accepted standards of care and necessary to prevent serious psychological and physical injuries." *See also* Kothmann v. Rosario, 558 Fed.Appx. 907 (11th Cir. 2014) (the Eleventh Circuit held that allegations similar to those raised by Guthrie to be sufficient to state a claim for deliberate indifference to the medical needs of a transgender inmate).

Defendants further contend that the report erred by failing to grant the motion to dismiss Wetzel from this case since he cannot be held liable based on *respondeat superior* and, since he is not a medical provider and plaintiff was receiving medical care from the prison medical staff. No doubt that liability for a constitutional violation is personal in nature and is only imposed where specific allegations of personal direction or actual knowledge and acquiescence in the challenged conduct exist. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). Thus, vicariously liability or *respondeat superior* liability cannot be the basis for liability. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015).

The report correctly finds that plaintiff has sufficiently stated a claim against former DOC Secretary Wetzel, to the extent he is sued for damages in his individual capacity, based on the four factors identified by the Third Circuit in Beers–Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001), which are required to hold a supervisor liable when it is alleged his policies or practices led to a constitutional violation. (Doc. 13 at 24-26). Plaintiff explains in her response to defendants' objections, (Doc. 15 at 12), as follows:

[her] complaint alleges that Section 19 subjects individuals with gender dysphoria to an extensive committee review process to determine and approve medical treatment by non-medical individuals as well as individuals not directly involved in their care. ECF No. 1 at ¶¶ 67-68. A process that individuals with other serious medical conditions do not have to endure. Id. at ¶ 68. Ms. Guthrie alleges that Defendant Wetzel reviews and approves all DOC policies, including Section 19, and was involved in developing and implementing the DOC's policies regarding transgender individuals. Id. at ¶¶ 69-71. Ms. Guthrie further alleges that Defendant Wetzel was deliberately indifferent to the risks of Section 19 by allowing the administrative committees to overrule the decisions of Ms. Guthrie's direct care providers. Id. at ¶¶ 60-62, 77, 82-83, 96-98. Finally, Ms. Guthrie claims that she has experienced intense pain and suffering due to the committees' denial of her physician-recommended treatment plan. Id. at ¶ 106.

The report concludes, "[b]ecause [plaintiff] alleges that the DOC policy [namely, Section 19], allows medical determinations, [to be made] on [her] behalf, based on the decisions of administrative personnel, [and because "[plaintiff] alleges that Wetzel reviews and approves all DOC policies, including Section 19, and was involved in developing and implementing the DOC's transgender policies"], Wetzel is a properly named defendant in this action." (Doc. 13 at 25-26). Thus, the court will adopt the report's recommendation that Wetzel's motion to dismiss be denied.

Finally, defendants contend that the report erred in finding that they were all not entitled to qualified immunity regarding all of plaintiff's 8th Amendment claims since they claim that the right to gender affirmation

13

surgery and the other treatment which plaintiff seeks is not clearly established.

The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right [ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 201–02 (2001). Qualified immunity provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). To determine whether the individual defendants are entitled to qualified immunity, the court must analyze two factors: 1) whether the plaintiff has shown facts that make out a constitutional rights violation, and if so, 2) whether those rights were "clearly established" at the time of the incident. Pearson v. Callahan, 555 U.S. 223 (2009); *see also* Perez v. Borough of Berwick, 507 Fed.Appx. 186, 192 (3d Cir. 2012) ("To determine whether the individual officers are entitled to qualified immunity, the District Court [is] required to consider whether, under the factual scenario of this case, the officers were reasonable to believe that their actions did not violate the [plaintiff's] clearly established rights."); Taylor v. Barkes, 575 U.S. 822, 135 S.Ct. 2042, 2044 (2015) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.") (citation omitted). Further, "[t]o be clearly established, a right must

be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012).

Since Judge Schwab details the allegations relevant to plaintiff's 8th Amendment claims in her report, the court will not fully repeat them herein. Suffice to say that the report, (Doc. 13 at 30-31), properly analyzes the qualified immunity issue as follows:

> Defendants correctly assert that no authority within this District or this Circuit establishes a constitutional right to gender affirmation surgery, or the evaluation of an outside physician who could recommend such surgery. But [plaintiff's] complaint does not claim an unfettered constitutional right to gender affirming surgery or access to the evaluation of an outside physician who could recommend such surgery. Instead, [plaintiff's] complaint, *inter alia*, alleges that Defendants were deliberately indifferent to her serious medical condition of gender dysphoria by alleging several grievances against all Defendants, thereby alleging a pattern of refusal to treat her serious medical condition.
>
> [Plaintiff's] complaint, among many things, alleges that Defendants were deliberately indifferent to her serious medical needs by failing to provide her access to feminine commissary items, access to a gender specialist, hair removal, gender affirming surgery, and failing to transfer her to a female prison. Doc. 1 at ¶¶ 107, 110. Additionally, [plaintiff] Guthrie alleges that the denial of her requested medical treatment was based on non-medical reasons. Id. at ¶ 67. Accepting all of these factual allegations as true, [plaintiff's] complaint alleges a pattern of refusal on the part of all the defendants to provide individualized medical treatment for [her] gender dysphoria.
>
> Similarly, in Doe, 2021 WL 1583556, at *24, the court held that:

15

several courts have allowed claims based on a denial of gender affirming or gender reaffirming surgery to proceed past a motion to dismiss. (string citations omitted).

[T]he basis for Doe's Eighth Amendment claim is not limited to the denial of gender affirming surgery. Far from it. As noted, Doe's claim is premised on allegations that the Defendants engaged in a long-standing refusal to provide a multitude of treatments and therapies that Doe contends were mandated by accepted standards of care and necessary to prevent serious psychological and physical injuries. The question on a motion to dismiss is not whether the plaintiff will ultimately prevail on his or her claim but "whether the plaintiff is entitled to offer evidence in support of his or her claims." (citations omitted). Determinations regarding whether any action or decision regarding Doe's care evinces or was the product of deliberate indifference must await a more developed record.

Moreover, as the report, (Id. at 31-33), points out:

[Plaintiff] also alleges that her gender dysphoria caused her to be suicidal and required her to be placed under "Constant Watch, the closest level of monitoring for DOC inmates experiencing suicidal ideation." Doc. 1 at ¶¶ 100-104. Thus, [plaintiff's] complaint alleges that her serious medical condition caused her to be suicidal and that Defendants were aware of her suicidal ideation by placing her under Constant Watch. Courts in various Circuits have held that qualified immunity should be denied if the prison officials were or should have been aware that the prisoner presented a substantial risk of suicide. (sting citations omitted).

Further, in Edmo, 935 F.3d at 790, the Ninth Circuit held that "[t]he credited expert testimony established that [gender confirmation surgery] is medically necessary to alleviate [inmate's] gender dysphoria." In fact, during the relevant time of this case, "the medical consensus [was] that [gender confirmation surgery] [was] effective and medically necessary in appropriate

16

circumstances" to treat some persons, including prison inmates, with gender dysphoria, and this fact has been recognized by the World Professional Association for Transgender Health, ("WPATH"), Standards of Care. *Id*. at 795.

Additionally, "[plaintiff's] complaint [*see* Doc. 1 at ¶¶ 66-67] alleges that the denial of her necessary medical treatment is based on nonmedical decisions, [i.e.], based on decisions of an administrative body." (Doc. 13 at 32) (citing Abu-Jamal v. Kerestes, 779 Fed.Appx. 893, 900 (3d Cir. 2019) (finding that denying an inmate treatment for his serious medical need based on nonmedical reasons violates the Eighth Amendment and precludes a qualified immunity defense at the motion to dismiss stage)).

In short, the court concurs with the report that based on the plaintiff's allegations detailed therein, which must be viewed in a light most favorable to the plaintiff and accepted as true at this stage, *see* US Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002), defendants are not entitled to qualified immunity at this time. *See* Newland v. Reehorst, 328 Fed.Appx. 788, 791 n. 3 (3d Cir. 2009) ("[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."); *see also* Diamond v. Owens, 131 F. Supp. 3d 1346, 1375-76 (M.D. Ga. 2015) (at motion to dismiss stage,

17

court held that defendant prison officials were not entitled to qualified immunity regarding inmate's claim that they were deliberately indifferent to her serious medical needs by denying her medically necessary treatment for her gender dysphoria) (citing Kothmann, 558 Fed.Appx. at 911-12 (holding that at motion to dismiss stage, the court only had to decide whether the plaintiff has sufficiently alleged a plausible violation of a clearly established constitutional right).

### IV. CONCLUSION

Based upon the above reasoning, the court will adopt Judge Schwab's report and recommendation, (Doc. 13), in its entirety, and overrule defendants' objections, (Doc. 14). This case will proceed with respect to all of the plaintiff's 8th Amendment claims against all four defendants. An appropriate order follows.

s/*Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 12, 2022**
20-2351-01